IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| K.B., Plaintiff, vs. ANGIE SPARKS, ET AL., Defendants. | CV 26-32-H-DLC ORDER |

Plaintiff K.B. filed a Complaint with the Court related to his Montana juvenile court records. (Doc. 1.) K.B.'s Complaint was screened, and he was directed to show cause why it should not be dismissed for lack of jurisdiction and failure to state a claim upon which relief may be granted. (Doc. 5.) K.B. responded. (Doc. 11.) The Complaint is dismissed.

## I. SCREENING PURSUANT TO 28 U.S.C. §§ 1915, 1915A

K.B. is a prisoner proceeding in forma pauperis against governmental defendants, so the Court must review his Complaint under 28 U.S.C. §§ 1915 and 1915A. Sections 1915A(b) and 1915(e)(2)(B) require the Court to dismiss a complaint filed in forma pauperis and/or by a prisoner against a governmental defendant if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. Furthermore, Fed. R. Civ. P. 12(h)(3) requires that "Whenever it appears by

suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." *See Kontrick v. Ryan,* 540 U.S. 443, 455 (2004).

The Court's prior screening Order is incorporated here in full. (Doc. 5.) K.B.'s response brief clarifies certain aspects of his Complaint but fails to overcome the flaws identified in the Court's prior Order. (Doc. 11.)

**A. Standing**

K.B.'s contentions regarding standing focus on the fact that his juvenile records apparently have not been destroyed, despite a court order requiring destruction, causing him privacy, liberty, and reputational harms. (Doc. 11 at 1 – 15.) Similarly, he asserts that his claims are ripe, because he is currently suffering reputational harm. In his response brief, K.B. has stepped back from the assertions related to his potential requirement to register that dominate his Complaint. K.B. has not alleged that he is currently required to register in Montana, despite his assertions in his brief that Montana subjects him to "registrant-related burdens." (Doc. 11 at 17.) He states that he has been "misclassified," in "registrant-related systems," (Doc. 11 at 15), but his Complaint does not make such an allegation, his brief does not detail what these assertions mean, and he is not listed in any publicly-available Montana offender register.

K.B.'s brief instead focuses on what he considers to be the ongoing, current harm of either being in these "registrant-related systems" or having had his records released to the Montana Supreme Court in 2026. K.B.'s brief relies heavily on *Humphries v. Cnty. of Los Angeles*, 554 F.3d 1170 (9th Cir. 2008), *as amended* (Jan. 30, 2009), *rev'd and remanded sub nom. Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29 (2010). In *Humphries*, the plaintiffs were suffering from appearing on a current public register of child abusers. K.B. has not alleged he is currently required to register or is listed on any publicly-available register. His vague allegations of being in "registrant-related systems" are insufficient to state a claim of imminent harm, as that could be a list of convictions, or could be related to his current conviction. (One of K.B.'s current convictions is sexual assault, which, under certain circumstances, requires registration under Mont. Code Ann. § 46-23-502.) As an inmate, he is currently not required to register. Because he is not, there is nothing this court can do to enforce any asserted right not to register. Any claim related to registration is not ripe.

Aside from any current registration requirement, K.B. asserts that he is suffering from "ongoing informational privacy and liberty harms." (Doc. 11 at 1.) K.B. identifies his standing as stemming from "stigma-plus," as explained in *Paul v. Davis*, 424 U.S. 693 (1976). In *Paul*, the plaintiff had been put on a flyer by a local business identifying him as an "active shoplifter." He contended that his

constitutional liberty interest had been curtailed, because he could not enter businesses without being suspected, and his future employment could be impacted. *Paul*, at 697. K.B. asserts that "Defendants' continued use and dissemination of K.B.'s juvenile records is causing ongoing reputational harms and has altered his legal status." (Doc. 11 at 2.) But K.B. has not sufficiently alleged a ripe "stigma-plus."

The alleged "continued use and dissemination" of K.B.'s juvenile records relates only to the transfer of these records to the Montana Supreme Court. Even the judge presiding in the district court of his juvenile case believed the records had been destroyed. (Doc. 11-1 at 8.) The judge who ordered the destruction of his records in 2014 denied his 2022 motion to schedule a hearing in his juvenile case in part because, as she wrote on his motion, "Juvenile file destroyed." (Doc. 11-1 at 8.) Accordingly, despite K.B.'s correct assertion that his records have been viewed or requested by the Montana Supreme Court, they are clearly not openly available, and not even readily available within the court system in which they are held.

Some form of the records was, however, provided to the Montana Supreme Court during K.B.'s latest lawsuit there. *K.B. v. State*, 2026 MT 29N (Feb. 17, 2026). The Supreme Court's online docket reflects that the record was filed, with a docket entry that says, "This is the Lewis and Clark County juvenile case."

mt.gov/case-info/closed/27189, visited September 14, 2026. There are no record documents publicly available on that site, nor is the current status or the content of those documents apparent. The "file" may in fact include no documents at all.

The Supreme Court's ensuing order does refer to the issue of K.B.'s registration, because that was the underlying motivation of the case he filed there. But the opinion uses his initials, thus not causing K.B. any reputational harm. What is not clear is to what extent any information in published opinions about K.B. comes from the records of his juvenile case or what came from the public records of his adult prosecutions, which commenced within months of his original juvenile commitment, when he was still under supervision related to his juvenile offense. Nonetheless, there is no stigma accruing to K.B. due to the release to the Supreme Court. K.B. is not in danger of losing employment, housing, or other opportunity related to any prior release that may have occurred. He may believe that the information is "floating around" but K.B. has not credibly alleged any current harm caused by any prior disclosure, nor any reason to believe any future disclosure is likely to occur.

But even if K.B. had established some credible imminent harm, instead of a past, limited disclosure, he has not shown that this Court can do anything to remedy any injury. Redressability is required to establish standing. Redressability is satisfied where it is "likely, as opposed to merely speculative, that the injury will

be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks and alterations omitted); *see also Spokeo, Inc.* v. *Robins*, 578 U.S. 330, 338 (2016).

K.B. seeks two types of relief, neither of which will remedy any past disclosure of his records, nor prevent any future disclosure. As a remedy, K.B. seeks a declaration, pursuant to 28 U.S.C. § 2201, that:

> "Defendants' ongoing refusal, failure, or neglect to honor and enforce (a) the state-court order directing that K.B. 's youth-court case and associated records be destroyed, and (b) the state-court order establishing that K.B. has no duty to register, violates K.B. 's rights to Due Process and Equal Protection under the Fourteenth Amendment to the United States Constitution."

(Doc. 1 at 25.) Such a declaration, however, requires an "actual controversy." 28 U.S.C. § 2201(a). Here, there is no legal controversy. K.B. has the valid legal order he desires, from the state court, and no Defendant could contest the validity of the order. There is no actual controversy over K.B.'s right to have his records destroyed. As to the further elements of K.B.'s proposed declaration, he fails to state claims for violations of his constitutional rights, as described elsewhere in this Order.

Second, K.B. seeks prospective or injunctive relief seeking enforcement of various state court orders. (Doc. 1 at 25 – 26.) He seeks an injunction that requires "Defendants, their officers, employees, agents and all persons acting in concert with them" to enforce the state court order that requires his records to be destroyed,

cease all actions inconsistent with the destruction order, such as dissemination, recognize the state court judgment that K.B. has no duty to register, and cease all actions inconsistent with that lack of duty, such as reporting requirements, etc., and correct all databases to reflect compliance with those state court judgments. (Doc. 1 at 26.) The Court cannot grant K.B. the relief he seeks.

Under *Ex parte Young*, despite the Eleventh Amendment sovereign immunity enjoyed by the states and their agencies, plaintiffs can sue "state officers in their official capacities for prospective injunctive relief ... for their alleged violations of federal law." *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013) (internal quotation marks and citation omitted). The sued state officer must have "some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Forward, Inc. v. Macomber*, 178 F.4th 470, 473 (9th Cir. 2026) (citing *Ex parte Young*, 209 U.S. 123, 157 (1908)). The *Ex parte Young* exception "does not normally permit federal courts to issue injunctions against state-court …clerks[.] [A]n injunction against a state court or its machinery would be a violation of the whole scheme of our Government." *Whole Woman's Heath v. Jackson*, 595 U.S. 30, 39 (2021) (internal quotations and citations omitted.) Also, "the *Young* exception does not apply when a suit seeks relief under state law, even if the plaintiff names an individual state official rather

than a state instrumentality as the defendant." *Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1153 (9th Cir. 2018).

In this case, K.B. seeks an injunction to require individuals who have no connection with the actions he complains of, or who are parts of immune state court machinery, to enforce a state court order, the contents and legality of which are not in dispute. K.B.'s request is not judiciable, and his request for relief cannot be effectuated.

**B. Failure to State a Claim**

Even if K.B. had standing to bring this action, K.B. fails to state a viable federal claim upon which relief can be granted. K.B. asserts four similar causes of action, in which he alleges that the Montana Supreme Court and the First Judicial District Court, Lewis and Clark County, have violated his Fourteenth Amendment equal protection, due process, double jeopardy, and privacy rights in the ways they have handled his various filings related to his youth court record. (Doc. 1 at 23 - 24.) He also alleges Defendants have violated his right to privacy under the Montana Constitution. (Doc. 1 at 23.)

1. K.B. fails to state a double jeopardy claim

K.B.'s Fourth Cause of Action asserts that Defendants have violated "his right to be free from Double Jeopardy." (Doc. 1 at 24.) The Double Jeopardy Clause…affords a defendant three basic protections:" '[It] protects against a

second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.' " *Ohio v. Johnson*, 467 U.S. 493, 497–98 (1984) (citing *Brown v. Ohio*, 432 U.S. 161 (1977).) K.B. has alleged no facts to state a claim under this provision. He simply states that his right has been violated.

The only possible violation of K.B.'s rights in this sense would be the third category, multiple punishments for the same offense. But this claim fails for at least two reasons. First, "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter,* 459 U.S. 359, 366 (1983). K.B. has alleged no facts to support a claim that he has been sentenced in any manner greater than the legislature intended.

Second, any claim that he has improperly sentenced is a matter for habeas corpus relief, and not for a collateral § 1983 suit. "Habeas is the exclusive vehicle for claims brought by state prisoners that fall within the core of habeas, and such claims may not be brought in a § 1983 action." *Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016). A prisoner in state custody cannot use a § 1983 action to challenge "the fact or duration of his confinement" and must seek federal habeas corpus relief (or appropriate state relief) instead. *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005). K.B. has postconviction remedies in state court, and, if exhausted there,

in federal habeas relief. But that is beyond the scope of this screening order. For purposes here, K.B. has failed to state a federal claim upon which relief may be granted.

2. K.B. fails to state an equal protection claim.

K.B.'s allegations regarding equal protection contend that the Montana Supreme Court treated him unequally because its rulings regarding K.B.'s filings were "directly contrary to its published opinions and how it treated similarly situated individuals." (Doc. 1 at 10.) K.B. then cites several cases in which, he claims, the Montana Supreme Court allowed a party to file proceedings akin to K.B.'s that were not immediately dismissed or denied, as his were. (Doc. 1 at 11 – 21.) K.B. extends this analysis to rulings of Montana's First Judicial District Court. (Doc. 1 at 19 et seq.)

As an initial, dispositive matter, the Montana Supreme Court is not a named defendant in this action, and could not be. If K.B. is unhappy with the decisions of the Supreme Court, his remedy is appeal to the United States Supreme Court, keeping in mind that the courts have judicial immunity for their decisions. This Court is not an appellate court for state court actions and could not provide a remedy regarding the decisions of the Montana Supreme Court.

But any construction of his equal protection claim fails. K.B.'s brief clarifies that he intends to state a "class of one" equal protection claim. (Doc. 11 at 22

(citing *Vill. of Willowbrook v. Olech,* 528 U.S. 562 (2000) (per curiam).) The allegations of his Complaint do not support his contention in his brief that his claim is directed at the Clerk of Court's failure to destroy and not disseminate his records. (Doc. 11 at 23.) Even had these allegations been included in his Complaint, however, he still fails to state an equal protection claim. (K.B.'s brief cites the allegations of his Complaint, which only conclusively assert that "Montana's government was aware that it treated K.B. differently from similarly situated individuals, as described in the preceding paragraph, but continued to do so, consistent with its intention to treat K.B. differently." (Doc. 1 at 23.) K.B.'s more specific allegations are directed only at the courts, which are not a proper defendant on this claim.)

To claim a violation of equal protection in a class of one case, K.B. must establish that a defendant intentionally, and without rational basis, treated him differently from others similarly situated. *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591 (2008). This theory of liability has not been found to extend to many circumstances. *Id.* K.B. must show that the discriminatory treatment "was intentionally directed just at him, as opposed ... to being an accident or a random act." *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

The Court's prior Order explained why the various court rulings that consume most of the pages of K.B.'s Complaint cannot be the basis of an equal

protection claim. (Doc. 5 at 10 – 11.) Judicial rulings are not amenable to § 1983 proceedings to attempt to reverse them. But construing his claim now as a class of one claim, K.B. specifically directs his allegations at Defendant Sparks, the clerk of the state court who, presumably, was responsible for the most recent release of his records. Setting aside the lack of allegations in K.B.'s Complaint regarding Sparks, he has not plausibly alleged that she had some particular animus against him that caused her to disseminate his records intentionally. (She may or may not have been the clerk when the original destruction order was issued, so she may or may not have been the person responsible at that point, over ten years ago.) At the pleading stage, K.B. is not obliged to carry the burden outlined above, to show with which comparators he has been treated differently. But he must plausibly allege that he has been, and he has alleged no facts, plausible or otherwise, that would show that Sparks treated K.B. differently from any other defendant, and, more importantly, that she intended to do so and was not just mistaken in her actions.[1] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (clarifying that a complaint does not "suffice if it tenders naked assertions devoid of further factual

[1] In *K.B. v. State*, 2026 MT 29N, ¶ 6, 584 P.3d 77, *reh'g denied*, No. DA 25-0294, 2026 WL 598418 (Mont. Mar. 3, 2026), the Montana Supreme Court noted that "in 2014, the District Court ordered the destruction of his case records within an order disposing of numerous juvenile records." K.B. has included this order in his filing, which, ironically, includes the names of many other former juvenile offenders. (Doc. 11-1.)

enhancement") (citation, alteration and internal quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (stating that a complaint must provide "enough facts to state a claim to relief that is plausible on its face"). K.B. fails to state an equal protection claim.

3. K.B. fails to state a due process claim.

K.B. asserts that the actions of Defendants have deprived him of his right to due process under the law. (Doc. 1 at 23.) His response to the show cause order claims that he has lost a liberty interest, due to Defendant Angie Sparks' and the Montana Department of Corrections' actions. (Doc. 11 at 15.) These acts creating, and in turn, violating his liberty interest are "the Youth Court's 2011 order sealing K.B.'s juvenile file; the Youth Court's 2014 order directing the destruction of those records; the Clerk's continued retention, use, and dissemination of those records for more than a decade; the 2015 judgment holding that K.B. has no duty to register, and the DOC's continued treatment of K.B. as a registrant in spite of that judgment." (Doc. 11 at 25.)

"A section 1983 claim based upon procedural due process ... has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993); *see also Jensen v. Brown*, 131 F.4th 677, 699 (9th Cir. 2025).

K.B. may have a liberty interest that arose when the state initiated its procedure, under state law, both to prosecute him, and to destroy his juvenile record. But K.B. has not identified any process he was due that he did not receive. Montana state law and Montana's Rules of Civil and Appellate Procedure, not federal law, govern the process he is due in state postconviction or appellate proceedings, and any process related to the sealing of his records. K.B. has been to court and received the process he is due. K.B. has identified no process he was due that he did not receive. His records should have been destroyed pursuant to a state court order, and that may not have happened.[2] But that is not a due process claim, if he received the process he was due, even if that process may, in the end, have been ineffective.

Furthermore, "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended law of or injury to life, liberty or property." *Daniels v. Williams,* 474 U.S. 327, 328 (1986) (emphasis in original). K.B. received the process due regarding his records, and the subsequent failure for the orders to be followed likely amounts to negligence of state actors. K.B. fails to state a Fourteenth Amendment Due Process claim.

4. K.B. fails to state a 14th Amendment privacy claim.

---

[2] Mont. Code Ann. § 44-5-111 provides a mechanism to enforce Montana's state laws regarding the confidentiality of criminal justice information.

K.B. alleges his Fourteenth Amendment privacy right has been violated by the conduct of the defendants, but he assumes, without legal support, that he has a federal constitutional privacy right related to his juvenile records. This assumption is in error.

K.B. is correct that "federal constitutional law recognizes a 'right to informational privacy' stemming from 'the individual interest in avoiding disclosure of personal matters.' " *Endy v. County of Los Angeles*, 975 F.3d 757, 768 (9th Cir. 2020) (quoting *In re Crawford*, 194 F.3d 954, 958 (9th Cir. 1999)). Such a right extends to things such as medical records relating to abortion, *Doe v. Garland*, 17 F. 4th 941, 947 (9th Cir. 2021), information regarding sexual activity, *Thorne v. City of El Segundo*, 726 F.2d 459, 468 (9th Cir. 1983), and "medical diagnoses, reports of abuse, substance-abuse treatment records and the like," *A.C. by & through Park v. Cortez*, 34 F.4th 783, 787–88 (9th Cir. 2022). However, the Ninth Circuit "has no case holding that a reasonable expectation of privacy in information triggers Fourteenth Amendment protection." *Doe v. Bonta*, 101 F.4th 633, 638 (9th Cir. 2024). As recently as 2020, the Ninth Circuit held that no Constitutional right to privacy in juvenile records was clearly established at the time discussed in that case. *Nunes v. Arata, Swingle, Van Egmond & Goodwin (PLC)*, 983 F.3d 1108, 1114 (9th Cir. 2020). In 2022, the Ninth Circuit approached the issue again but determined that, after balancing various factors, disclosure of

juvenile records was acceptable. *A.C. by & through Park v. Cortez*, 34 F.4th 783, 787 (9th Cir. 2022). The Court made a distinction between "biographical information" and more "intimate" information, such as the medical and abuse information mentioned above.

In this case, K.B. has assumed such a federal constitutional privacy right exists, but this Court is unwilling to do the same, until such a right has been found by a higher court. In this case, K.B.'s juvenile activity was not personal or private; it was a violation of the law that affected other people. There may be legitimate and important reasons for the state to seal and destroy those records, but there is not yet binding precedent that says that such a right is found in the Fourteenth Amendment.

5. The Court declines to hear K.B.'s Montana Constitutional Claim

K.B.'s third cause of action in his Complaint is a violation of his right to privacy under the Montana Constitution. (Doc. 1 at 23 – 24.) Because the Court concludes it lacks jurisdiction over K.B.'s claims, and he fails to state a claim for relief under federal law, the Court declines to exercise its supplemental jurisdiction. 28 U.S.C. § 1367(c)(3).

## II. CONCLUSION

For the foregoing, inexhaustive reasons, K.B.'s Complaint must be dismissed. K.B. has requested the opportunity to amend, but the Court's lack of

jurisdiction and the facts related to his claims make amendment futile.

Accordingly, it is HEREBY ORDERED:

1. K.B.'s motion to proceed under alias is DENIED as moot. (Doc. 12.)

2. K.B.'s Complaint is DISMISSED for lack of jurisdiction and failure to state a claim. The Clerk of Court is directed to close this matter and enter judgment. Pursuant to Fed. R. App. P. 24(a)(3)(A), the Court does not certify that appeal would not be taken in good faith.

3. The Clerk of Court is directed to have the docket reflect that the dismissal of this Complaint counts as a strike against K.B. within the meaning of 28 U.S.C. § 1915.

DATED this 6th day of October, 2026.

Dana L. Christensen, District Judge
United States District Court